UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

NEW ENGLAND VENTURES, LLC

              Plaintiff,

v.                                                                    Case No.: 1:22-cv-_____

AZIMUT BENETTI S.p.A.;
AZIMUT BENETTI SERVICE USA, INC.;                JURY TRIAL DEMANDED
BRUNSWICK PRODUCT PROTECTION
CORPORATION and MARINEMAX
NORTHEAST, LLC,

              Defendants.

_____

## COMPLAINT INCLUSIVE OF REQUEST FOR DECLARATORY RELIEF

Plaintiff, NEW ENGLAND VENTURES, LLC by and through its undersigned counsel, files this Complaint against AZIMUT BENETTI S.p.A.; AZIMUT BENETTI SERVICE USA, INC.; BRUNSWICK PRODUCT PROTECTION CORPORATION and MARINEMAX NORTHEAST, LLC stating in support thereof as follows:

### INTRODUCTION

1.     Plaintiff bought a brand new sixty-foot yacht marketed, manufactured, sold and/or serviced by Defendants.  The yacht is defective because it suffers from excessive vibration and corrosion issues as well as problems with its propellers.  Defendants can't fix these issues; have attempted after-market temporary repairs; concede the propellers require re-design; have all but acknowledged the yacht is defective; have failed to properly care for and maintain the yacht while it was in their possession; breached their warranties; failed to properly service the yacht and failed in other ways as will be shown

at trial.  This lawsuit seeks remedies for Defendants' wrongful conduct which has caused Plaintiff to suffer, among other things, money damages.

JURISDICTION & VENUE

2.      This Court's jurisdiction is invoked pursuant to the provisions of Title 28, United States Code § 1332, *et seq.* (diversity jurisdiction) on the grounds the instant claims are brought by a citizen of the State of Tennessee against citizens of different states and a citizen of a foreign country and the claim for damages, exclusive of interest and costs, exceeds the jurisdictional minimum of $75,000 and/or 28 U.S.C. § 1367 based on supplemental jurisdiction over any other pendent claim so related to any claim over which the Court has jurisdiction.

3.      The action also seeks declaratory relief pursuant to 28 U.S.C. § 2201 (Federal Declaratory Judgment Act) for the purpose of determining a question of actual controversy between Plaintiff and Defendant MarineMax Northeast, LLC.

4.      In the alternative or in addition, jurisdiction exists under the general maritime law pursuant to 28 U.S.C. § 1333, however no Fed. Rule Civ. P. 9(h) election is made.

5.      Plaintiff's claims arise out of, relate to and/or implicate the Defendants' actions within Rhode Island.

6.      The majority of the witnesses and documents relevant to this action are believed to be located in Rhode Island and/or are within neighboring states of New York and Massachusetts.

7.      Venue is proper in the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1391(b)(2).

8.      Plaintiff is entitled to pre-judgment interest on all pecuniary damages at the rate of 12% per annum in accordance with R.I.G.L. § 9-21-10(a).

PARTIES

9.      Plaintiff NEW ENGLAND VENTURES, LLC ("NE Ventures") is a business entity organized and existing under the laws of Tennessee.

10.     All of NE Ventures' member(s) are citizens of Tennessee.

11.     At all times material hereto, NE Ventures owned the 2022 60' Azimut AZ60-Fly yacht bearing Hull Identification # XAX60476F122 ("Yacht").

12.     The Yacht is homeported in Newport, Rhode Island.

13.     The Yacht is currently located in Rhode Island and is expected to be in Rhode Island for the pendency of this action.

14.     Plaintiff purchased the Yacht with the intention of using it both recreationally as well as for the purpose of entertaining guests in aid of advancing its business interests.

15.     Defendant AZIMUT BENETTI S.P.A. ("Azimut SpA") is a yacht manufacturer with its principal place of business located at Via Martin Luther King, 9/11-10051, Avigliana (Torino), Italy.

16.     AZIMUT BENETTI SERVICE USA, INC. ("Azimut USA") is a business entity organized and existing under the laws of Florida and with its principal place of business located in Fort Lauderdale, Florida.

17.     Azimut USA also does business as "Azimut-Benetti USA".  For instance, Federico Ferrante holds himself out as the President of "Azimut-Benetti USA" on his LinkedIn profile, but in fact is the President of Azimut USA.

18.     At all times material hereto, Azimut USA was engaged in the sales assistance, supervision of after-sale activities of Azimut yachts and service and repair of yachts manufactured by Azimut including the Yacht at issue in this action.

19.     Defendant BRUNSWICK PRODUCT PROTECTION CORPORATION ("Brunswick") is a business entity organized and existing under the laws of Delaware with, on information and belief, its principal place of business located in Lake Forest, Illinois.

20.     Upon information and belief, Brunswick issued to Plaintiff a service plan (believed to be referred to as "Passport Premier Service Plan") and/or an additional and/or extended warranty on the Yacht.

21.     Defendant MARINEMAX NORTHEAST, LLC ("MarineMax NE") is a business entity organized and existing under the laws of Delaware with its principal place of business located in Clearwater, Florida.

22.     At all times material hereto, MarineMax NE acted as the authorized dealer and/or agent of Defendants and/or one or more of them including the provision of sales, service and repair of yachts manufactured by Azimut SpA including the Yacht at issue in this action.

23.     Defendants are subject to personal jurisdiction in Rhode Island.

24.     In the alternative, and to the extent federal law is implicated, Fed. Rule Civ. P. 4(k)(2) jurisdiction exists over Azimut SpA.

25.     Among other things, Azimut SpA has debuted vessels at the Newport International Boat Show held in Newport, RI including holding press conferences during the show.

26.     Azimut SpA owns and controls the data on the website bearing the domain address "azimutyachts.com".

27.     Among other things, on the website bearing the domain address "azimutyachts.com" it identifies Azimut SpA's "dealer"; its "service center" and "spare parts" as all being available at a Newport, Rhode Island address.

28.     Among other things, the website tab on the Google business listing for Azimut USA takes you to the website bearing the domain address "azimutyachts.com"

29.     The domain name "azimutbenetti.com" associated with the usernames of those individuals from Azimut USA is, upon information and belief, hosted in Italy and presumably controlled by Azimut SpA.

30.     At all times material hereto, MarineMax NE maintained offices in Newport and Wakefield, Rhode Island and had registered with the Rhode Island Secretary of State.

31.     At all times material hereto, Plaintiff conducted its business with MarineMax NE through MarineMax NE's Newport, Rhode Island office.

32.     At all times material hereto, one or more Defendants were and are engaged in the sale and service of vessels in, among other locations, Rhode Island.

33.     Defendants conduct business throughout the United States including in Rhode Island.

34.     Defendants market their products, including the Yacht, in Rhode Island.

35.     Defendants transact business and contract to supply services and/or things for purchase by consumers in Rhode Island.

36.     By reason of Defendants' conduct complained of herein, Plaintiff has suffered injury in Rhode Island.

37.     On information and belief, Defendants have derived and continue to derive substantial revenue from marketing, sales and distribution into Rhode Island.

38.     Defendants have purposefully availed themselves of the privilege of conducting commercial activities in Rhode Island.

<u>FACTS COMMON TO ALL ALLEGATIONS</u>

39.     On or about January 2021, the Yacht was manufactured by Azimut SpA.

40.     On information and belief, Azimut SpA subsequently introduced the Yacht into the stream of commerce and it was marketed, sold and serviced in the United States by one or more Defendants.

41.     On or about June 2021, Plaintiff closed on the Yacht.

42.     The Yacht's sale price was $2,197,020.00 of which Plaintiff obtained a trade allowance of $1,368,000.00 and Plaintiff paid the remaining balance of $835,510.00.

43.     On or about July 2021, Plaintiff took delivery of the Yacht.

44.     From about the date of delivery, the Yacht exhibited vibration problems and immediately the propellers showed galvanic corrosion (electrical effect) and erosion corrosion (mechanical effect likely due to cavitation.)

45.     The vibration problems are caused by design and manufacturing flaws in the Yacht and/or its component parts.

46.     The galvanic corrosion problems are caused by design and manufacturing flaws in the Yacht and/or its component parts.

47.     The erosion corrosion problems are caused by design and manufacturing flaws in the Yacht and/or its component parts.

48.     At some point in time near when the Yacht first arrived in Baltimore, MD from Italy, one or more Defendants, on information and belief, were on notice of vibration problems.

49.     As early as July 20, 2021, a machinery service vendor hired, directed or controlled by one or more Defendants was aboard the Yacht attempting to correct the vibration reporting "still cannot correct" and noting "vibration is starting to cause oil leaks on ZF Transmission."

50.     Thereafter, the problems and loss of use compounded with, among other things, Defendants performing sea trials in New England waters in July 2021 and acknowledging vibrations and telling Plaintiff there are propeller issues; in August 2021 the Yacht was hauled in Rhode Island and out of service for weeks and then Plaintiff at Defendants' direction delivered the Yacht to a MarineMax service yard in Baltimore, MD (October 2021) and then Dania, FL (November 2021).

51.     In January 2022, and at the encouragement of MarineMax NE, the Yacht was listed for sale by MarineMax NE and a sales contract was signed on March 12, 2022 for $2,400,000 by a potential purchaser.  However, on March 23, 2022 the Yacht failed its sea trial (*a typical condition of all boat sales*) and the prospective purchaser abandoned the transaction.

52.     On information and belief, the Yacht failed its sea trial for reasons related to and/or arising out of the design and manufacturing defects alleged herein and Defendants' inability to remedy these defects.

53.     The Yacht's vibration and corrosion issues (including the propeller problems) remain open and unresolved with a September 2022 report of a "vibration, noise and alignment specialist" ("September Vibration Report") finding:

      a.   "overall vibration levels are elevated"

      b.   "starboard vibration levels on the reduction gears output side are elevated"

      c.   "starboard shaft displacement amplitude is elevated"

54.     The September Vibration Report was preceded by a July 2022 report from the same "vibration, noise and alignment specialist" identifying excess vibration in numerous areas throughout the Yacht.

55.     The September Vibration Report was preceded by an August 9, 2022 email received by Plaintiff from the Regional President of MarineMax (Larry Russo, Jr.) in which Plaintiff is advised the Yacht was hauled and "*on inspection we found cavitation makers on the new props.  Originally we thought the port was worse but it appears the starboard side is showing more marks.*"

56.     The September Vibration Report was preceded by the Yacht being hauled and supplied with new propellers on multiple occasions including in July 2022 during which Plaintiff was told by email from Nick Schidder an operations manager for "MarineMax": "The props are going from the manufacturer to Azimut Italy and then being shipped by air . . . ."  On information and belief, the reference to "Azimut Italty" refers to Defendant Azimut, SpA.

57.     These design and manufacturing flaws are so serious as to breach the essential purpose of Plaintiff's purchase of the Yacht in that the Yacht cannot be used (or can

only be used in a very limited manner) nor sold for a sum that would represent a reasonable recoupment of the original purchase monies and Plaintiff's damages.

58.     These design and manufacturing flaws are so serious as to render the Yacht non-conforming and not suitable for the particular purpose it was purchased.

59.     As a direct and proximate result of this breach, Plaintiff sustained substantial damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees.

60.     Plaintiff has given Defendants a reasonable amount of time to correct these design and manufacturing flaws, but Defendants have not (or cannot) correct the flaws.

61.     Plaintiff did not know and could not have reasonably known of the design and manufacturing flaws until the Plaintiff used the Yacht and allowed Defendants a reasonable period of time to attempt to correct the flaws.

62.     Despite Defendants' assurances otherwise, it was only after repeated service attempts which failed to eliminate the flaws that Plaintiff appreciated the Yacht suffered from design and manufacturing defects.

63.     Plaintiff attempted to revoke acceptance of the Yacht and obtain the return of the purchase price or elicit some alternative solution all without success.

64.     Some of the damages caused by the breaches pleaded herein caused physical damage to the Yacht including, but not limited to, hydraulic fluid leaks and oil leaks in the main engines and Plaintiff is worried the vibration may have caused other as yet unknown damage and/or future damage.

65.     At all times material hereto, Defendants engaged in, among other things, the manufacture, modification, service and/or sale of yachts including the Yacht at issue in this action.

66.     At all times material hereto, Defendants held themselves out to the public as fully competent to manufacture, modify, service and/or sell yachts including the Yacht at issue in this action.

67.     At all times material hereto, Defendants represented and warranted that their yachts (including the Yacht at issue in this action) were designed and manufactured consistent with good industry practices, were fit and proper for the intended use and/or were free of defects in materials, workmanship and design.

68.     At all times material hereto, all warranties including additional warranty coverages purchased by Plaintiff were in place.

69.     Defendants have failed to honor and have breached their applicable warranties.

70.     All conditions precedent to the maintenance of this cause of action have been satisfied, have occurred, or have otherwise been waived.

### COUNT ONE

(As against MarineMax Northeast, LLC)

*The Arbitration Term Contained in the Final*
*Purchase Agreement is Unconscionable and Not Enforceable*

71.     Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

72.     A contract titled "Final Purchase Agreement" executed on June 30, 2021 (for this and all subsequent Counts referred to as "Agreement"), attached as Exhibit "A", exists between MarineMax NE and Plaintiff.

73.     The Agreement contains an arbitration term at ¶ 15.

74.     The contractual mandatory arbitration term contained at ¶ 15 of the Agreement is substantively and procedurally unconscionable such that it is not enforceable.

75.     Any resolution of Plaintiff's claims regarding the unconscionability of the arbitration term requires an analysis of the law and facts.

76.     Defendants possess facts important and necessary to Plaintiff in order to carry its burdens of proof which facts are essentially inaccessible by reason of the discovery limitations imposed by the arbitration term.

77.     Plaintiff's challenge to the arbitration term based on unconscionability will, among other things, include evidence:

   a.   that Plaintiff's agreement to the arbitration term contained therein was obtained after MarineMax NE took Plaintiff's managing member (Steven G. Cates) to a celebratory luncheon;

   b.   that Cates was encouraged by MarineMax NE to go to the luncheon where alcohol was served and consumed by Plaintiff at MarineMax NE's behest because MarineMax NE told Plaintiff the Yacht was still being readied for delivery;

   c.   that following the lunch MarineMax NE reported to Cates it still could not deliver the Yacht, but insisted the Yacht closing occur that day;

   d.   that MarineMax NE told Cates it was the end of its quarter and that he had to sign the Agreement (thereby agreeing to the arbitration term in dispute) right then in a manner and in a highly pressurized environment such that

Cates following the long lunch could not adequately know of and/or consider, among other things, the arbitration term;

e.  that Cates will testify MarineMax NE was "petrified" he would not sign and that without having received his Yacht but against the promise that the Yacht would be readied within days he felt compelled to agree to the arbitration term by signing the Agreement;

f.  that MarineMax NE did not point out or highlight to Cates the arbitration term contained in the Agreement;

g.  that Cates was given no opportunity to negotiate any of the Agreement's terms including the arbitration term;

h.  that the arbitration term limits Plaintiff to two depositions of four hours each with "no other discovery allowed" meaning Plaintiff will have no ability to obtain documentary evidence nor meaningful witness testimony:

   i.  Plaintiff submits this was a complicated transaction and the Yacht's defects implicate multiple MarineMax personnel each with knowledge as to different aspects of Plaintiff's claims, including, Frank Brennan (MarineMax NE, Newport, RI "Sales Team Leader"); Larry Russo (MarineMax NE Regional President); Nick Schwidder (MarineMax "Operations Manager" with responsibility for Rhode Island); Michael Gisch (MarineMax Yard Manager); Timothy M. Sheilds (MarineMax's Service Training and Development Manager); Robert Bolt (MarineMax Service Manager) and Amie Nappi (MarineMax Senior Service Manager).

    ii. Plus, there are many MarineMax, Azimut SpA and Azimut USA personnel that were involved in the Yacht's issues such that without paper discovery Plaintiff will be unable to identify the depth and areas of their knowledge thereby prejudicing Plaintiff in preparing its claims and prejudicing Plaintiff in its effort to identify which two persons to depose.  These MarineMax personnel include, but are not limited to, Andrew Schneider; Blake Phillips; Joe Cusmano; Nick Schwidder and as yet unidentified MarineMax personnel.

    iii. Plus, there are many vendors hired, directed and/or paid for by Defendants that were aboard the Yacht and who possess knowledge of the defects alleged herein including, but not limited to, Power Products Systems, LLC (with an office in Cranston, Rhode Island); Robert A. Noyce & Associates; H&H Propeller Shop (with an office in Salem, MA) and Advanced Mechanical Enterprises, Inc (who undertook sea trials (in July and September 2022) and identified vibration problems on each occasion.

i. that the discovery limitations prejudice Plaintiff by unfairly limiting its ability to identify and present evidence critical to its claims against MarineMax NE;

j. that the discovery limitation imposed by the arbitration term unfairly prejudices Plaintiff who carries the burden of proof and would necessarily be the party who would most need document and deposition discovery from MarineMax NE in order to carry its burdens of proof;

k.  that the discovery limitation imposed by the arbitration term is <u>not</u> prejudicial to MarineMax NE because it does not carry the burden of proof and because it generated documents and controls witnesses with knowledge such it is already in position to identify those witnesses and documents most helpful to its defense and

l.  that the discovery limitation imposed by the arbitration term is designed to prejudice a claimant and to unfairly shield MarineMax NE from properly developed claims.

78.   In addition, the arbitration term does not embrace the vessel manufacturer (Azimut S.p.A.) much less Azimut USA and/or Brunswick which on its face demonstrates unconscionability because it splits any claimant's claim(s) forcing a claimant to pursue separate avenues for relief when, in fact, Plaintiff believes the evidence will show Defendants were, among other things, joint venturers and/or acted through a common and uniform course of conduct.

79.   At a minimum, Plaintiff claims fact discovery is necessary to support its claims the arbitration term is unconscionable.

## COUNT TWO

(As against MarineMax Northeast, LLC)

*The Yacht Purchase Agreement is Void Ab Initio*

80.   Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

81.    The Yacht suffers from design and manufacturing flaws that completely frustrate the essential purpose of Plaintiff's purchase thereby rendering the Agreement void *ab initio*.

82.    Defendant MarineMax NE by its actions and statements disagrees, refuses to accept the return of the Yacht and refuses to refund Plaintiff the monetary value it paid (along with such damages as have been incurred by Plaintiff) all while wanting to continue to service the Yacht.

83.    There exists an actual controversy between these parties within the jurisdiction of this Court involving their rights and liabilities and whether the essential purpose of the sales transaction between the parties has been so completely frustrated as to require a finding that the Agreement was void *ab initio* and returning Plaintiff to the original position it was in before this transaction including an award of the purchase price and all compensable damages, fees, costs and interest.

**COUNT THREE**

(All Defendants)

*Breach of Warranties Pursuant to the*
*Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.*

84.    Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

85.    Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

86.    Defendants are each a "supplier" and/or "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

87.    The Yacht is a "consumer product" as defined in 15 U.S.C. § 2301(6).

88.     Defendants expressly warranted the Yacht and its component parts which warranties were written warranties within the meaning of 15 U.S.C. § 2301(6).

89.     Defendants impliedly warranted the Yacht and its component parts within the meaning of 15 U.S.C. § 2301(7).

90.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

91.     15 U.S.C. § 2304(a)(1) requires Defendants, as warrantors, to remedy any defect, malfunction or nonconformance within a reasonable time and without charge to the Plaintiff.

92.     Despite repeated demands, Defendants have failed to remedy the Yacht's vibration, corrosion defects and propeller problems within a reasonable time, and/or within a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Yacht.

93.     As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

**COUNT FOUR**

(As against all Defendants)

*Breach of Express Warranty Pursuant to R.I. Gen. Laws 6A-2-313, et seq.*

94.     Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

95.     In the alternative and/or in addition, one or more Defendants issued express warranties to Plaintiff that, among other things, the Vessel was free of defects.

96.     Any attempts to disclaim the express warranties are invalid.

97.     One or more Defendants breached the express warranties by designing, manufacturing and/or selling the Yacht with the flaws as described herein.

98.     The Yacht is flawed and non-conforming to the express warranties made by Defendants.

99.     One or more Defendants have been unable to repair the Yacht's design and manufacturing flaws.

100.    At all times herein, Plaintiff afforded Defendants a reasonable time by which to comply with the express warranties.

101.    The Yacht's design and manufacturing flaws cannot be repaired and one or more Defendants have refused to replace the Yacht thereby breaching the express warranties.

102.    As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

103.    One or more Defendants are liable to Plaintiff under Rhode Island law including, but not limited to, R.I. Gen. Laws 6A-2-313, *et seq.* for their breach of the express warranties.

## COUNT FIVE

(As against all Defendants)

*Breach of Implied Warranty of Merchantability Pursuant to*
*R.I. Gen. Laws 6A-2-314, et seq.*

104.    Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

105.    In the alternative and/or in addition, one or more Defendants impliedly warranted to Plaintiff that, among other things, the Yacht was merchantable as a powerboat capable of regular use and enjoyment.

106.    Any attempts to disclaim the implied warranties are invalid.

107.    One or more Defendants breached the implied warranties by designing, manufacturing and/or selling the Yacht with the flaws as described herein.

108.    As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

109.    One or more Defendants are liable to Plaintiff under Rhode Island law including, but not limited to, R.I. Gen. Laws 6A-2-314, *et seq.* for their breach of the implied warranties.

## COUNT SIX

(As against all Defendants)

*Breach of Implied Warranty of Fitness for a Particular Purpose*
*Pursuant to R.I. Gen. Laws 6A-2-315, et seq.*

110.    Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

111.    In the alternative and/or in addition, one or more Defendants impliedly warranted to Plaintiff that the Yacht was fit for a particular purpose, namely, for use as a powerboat capable of regular use and enjoyment.

112.    Any attempts to disclaim the implied warranty of fitness for a particular purpose are invalid.

113.    One or more Defendants breached the implied warranty of fitness for a particular purpose by designing, manufacturing and/or selling the Yacht with the flaws as described herein.

114.    As a direct and proximate result of this breach, Plaintiff sustained substantial damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

115.    One or more Defendants are liable to Plaintiff under Rhode Island law including, but not limited to, R.I. Gen. Laws 6A-2-315, *et seq.* for their breach of the implied warranty of fitness for a particular purpose.

## COUNT SEVEN

(As against all Defendants)

*Negligence*

116.    Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

117.    Defendants owed Plaintiff a duty to exercise reasonable care in developing, designing, manufacturing, assembling, testing, inspecting, distributing, advertising, marketing and selling the Yacht and its component parts.

118.    Defendants had a duty to identify flaws in the design and manufacturing of the Yacht and/or its component parts.

119.    Defendants breached this duty to Plaintiff by, among other things, failing to exercise reasonable care in the designing, manufacturing, assembling, inspecting, testing, distributing, advertising, marketing and/or selling of the Yacht and/or its component parts to foreseeable users such as Plaintiff.

120.    Defendants knew or should have known of the Yacht's design and manufacturing flaws parts when it placed it into the stream of commerce and/or when the Yacht was sold to Plaintiff.

121.    As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

## COUNT EIGHT

(As against MarineMax Northeast, LLC)

*Breach of Contract*

122.   Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

123.   In the alternative or in addition, and without prejudice to Plaintiff's Count One or Count Two, a contract (the Agreement, attached as Exhibit "A") existed between Plaintiff and MarineMax NE.

124.   The essential purpose of the Agreement was for MarineMax NE to give Plaintiff a vessel capable of normal use in exchange for Plaintiff's consideration.

125.   Plaintiff fully performed, but MarineMax NE failed to give Plaintiff a vessel capable of normal use and in fact, the vessel that was conveyed suffered from design and manufacturing defects so serious as to render the Yacht non-conforming and not suitable for the particular purpose it was purchased.

126.   MarineMax NE breached the Agreement.

127.   As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

## COUNT NINE

(As against MarineMax Northeast, LLC)

*Mutual Mistake*

128.    Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

129.    In the alternative or in addition, and without prejudice to Plaintiff's Count One or Count Two, a contract (the Agreement, attached as Exhibit "A") existed between Plaintiff and MarineMax NE.

130.    At the time the Agreement was entered there was a basic assumption that MarineMax NE would provide Plaintiff a vessel in good working order and free of design and manufacturing flaws.

131.    At the time the Agreement was entered into there was a basic assumption that MarineMax NE would provide to Plaintiff a vessel from vibration problems, galvanic and erosion corrosion.

132.    At all times material hereto, the Yacht was not in good working order.

133.    At all times material hereto, the Yacht had substantial defects.

134.    All parties agree the Yacht suffers from vibration issues.

135.    All parties agree the Yacht suffers from corrosion issues.

136.    All parties agree the Yacht suffers from propeller problems.

137.    There was a mistake of both parties to the Agreement as to the condition of the Yacht at the time the purchase and sale transaction was consummated.

138.    This mistake of both parties has a material effect on the agreed upon exchange of performance of the two parties under the Agreement.

139.   Plaintiff did not bear the risk of mistake under the Agreement to purchase the Yacht.

140.   Accordingly, the Agreement is voidable by Plaintiff in this matter.

141.   As a direct and proximate of the Agreement being void, Plaintiff is entitled to be placed back in the original position it was in before this transaction including an award of all compensable damages, fees, costs and interest.

## COUNT TEN

### (As against MarineMax Northeast, LLC)

*Unilateral Mistake*

142.   Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

143.   In the alternative or in addition, and without prejudice to Plaintiff's Count One or Count Two, a contract (the Agreement, attached as Exhibit "A") existed between Plaintiff and MarineMax NE.

144.   At the time the Agreement was entered there was a basic assumption that MarineMax NE would provide Plaintiff a vessel in good working order and free of design and manufacturing flaws.

145.   At the time the Agreement was entered into there was a basic assumption that MarineMax NE would provide to Plaintiff a vessel free from vibration problems, galvanic and erosion corrosion and propeller problems.

146.   At all times material hereto, the Yacht was not in good working order.

147.   At all times material hereto, the Yacht had substantial defects.

148.   All parties agree the Yacht suffers from vibration issues.

149. All parties agree the Yacht suffers from corrosion issues.

150. All parties agree the Yacht suffers from propeller problems.

151. There was a mistake of both parties to the Agreement as to the condition of the Yacht at the time the purchase and sale transaction was consummated

152. The fact that the Yacht was not in good working order has a material effect on the agreed exchange of performance of the two parties under the Agreement.

153. The fact that the Yacht had a substantial defect has a material effect on the agreed exchange of the two parties under the Agreement.

154. The fact that the Yacht suffers from vibrations has a material effect on the agreed exchange of the two parties under the Agreement.

155. The fact that the Yacht suffers from corrosion issues has a material effect on the agreed exchange of the two parties under the Agreement.

156. The fact that the Yacht suffers from propeller problems has a material effect on the agreed exchange of the two parties under the Agreement.

157. The fact that the Yacht was not in good working order is adverse to Plaintiff.

158. The fact that the Yacht suffers from vibrations is adverse to Plaintiff.

159. The fact that the Yacht suffers from corrosion is adverse to Plaintiff.

160. The fact that the Yacht suffers from propeller problems is adverse to Plaintiff.

161. Plaintiff did not bear the risk of these mistakes under the Agreement to purchase the Yacht.

162. It would be unconscionable to require Plaintiff to receive as his benefit of the bargain a vessel that was not in good working order, like the Yacht.

163.   It would be unconscionable to require Plaintiff to receive as his benefit of the bargain a vessel that suffered substantial defects, like the Yacht.

164.   It would be unconscionable to require Plaintiff to receive as his benefit of the bargain a vessel that suffers from vibrations, like the Yacht.

165.   It would be unconscionable to require Plaintiff to receive as his benefit of the bargain a vessel that suffers from corrosion, like the Yacht.

166.   It would be unconscionable to require Plaintiff to receive as his benefit of the bargain a vessel that the parties agree suffers from propeller problems, like Yacht.

167.   MarineMax NE provided the Yacht which suffered from the defects recited above.

168.   As a direct and proximate of the unilateral mistake, the Agreement should be rescinded with Plaintiff being placed back in the original position it was in before this transaction including an award of all compensable damages, fees, costs and interest.

## COUNT ELEVEN

(As against MarineMax Northeast, LLC and Azimut USA)

*Negligent Sale, Service, Repair and Maintenance and
Breach of Implied Warranty of Workmanlike Performance*

169.   Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

170.   At all times material here, Defendants MarineMax NE and Azimut USA were in the business of regularly selling, repairing, servicing and/or maintaining vessels.

171.   Plaintiff entrusted the Yacht for service, repair and maintenance to MarineMax NE and Azimut USA such that they had a duty to perform their work in a reasonable and nonnegligent manner.

172.    Plaintiff entrusted the Yacht for repair and maintenance to MarineMax NE and Azimut USA such that they had an implied duty of workmanlike performance.

173.    By reason of MarineMax NE's and Azimut USA's actions and inactions as alleged herein, they breached duties they owed Plaintiff.

174.    As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

### COUNT TWELVE

(As against all Defendants)

*Negligence while the Yacht was in their Care, Custody and Control*

175.    Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

176.    Defendants owed Plaintiff a duty to provide the Yacht with a safe berth while it was in their care, custody and control.

177.    In addition and/or in the alternative, Defendants owed Plaintiff the duty to keep care, custody and control of the Yacht in a reasonable and workmanlike manner.

178.    In addition and/or in the alternative, Defendants owed Plaintiff the duty to properly maintain and repair the Yacht.

179.    Defendants breached the duty(ies) they owed Plaintiff by failing to perform in a workmanlike manner by, among other things, allowing the Yacht's propellers to deteriorate and in other ways as will be shown at trial.

180.    As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

## COUNT THIRTEEN

(As against MarineMax NE)

*Bailment*

181.    Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

182.    Plaintiff delivered the Yacht into the care, custody and control of MarineMax NE for the purpose of repair and sales brokerage.

183.    MarineMax NE accepted the Yacht into its custody, care and control without objection or qualification.

184.    MarineMax's custody, care and control was exclusive at various times and its possession was that of a bailee of the Yacht.

185.    During the time the Yacht was in MarineMax's exclusive possession it was allowed to deteriorate in the ways asserted herein such that MarineMax breached a duty owed Plaintiff.

186.    As a direct and proximate result of MarineMax breaching its duty as a bailee of the Yacht, Plaintiff suffered damages.

187.    As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including the expenditure of the Yacht's cost and applicable finance charges; expenditures associated with these flaws; loss (or limitation) of use for extended periods of time; lost business opportunities; diminution in value; the loss of a potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

### COUNT FOURTEEN

(As against MarineMax NE)

*Breach of Central Listing Agreement*

188.    Plaintiff repeats and realleges all the preceding paragraph #'s 1 – 70 as if fully set forth herein.

189.    A Central Listing Agreement (the "Listing Agreement," attached as Exhibit "B") existed between Plaintiff and MarineMax NE for the purpose of seeking the Yacht's sale.

190.    At all times material hereto, Plaintiff performed its obligations under the Listing Agreement.

191.    As a result of MarineMax NE's performance under the Listing Agreement, a sales contract was signed on March 12, 2022 for $2,400,000 by a potential purchaser. However, on March 23, 2022 the Yacht failed its sea trial (*a typical condition of all boat sales*) and the prospective purchaser abandoned the transaction.

192.    On information and belief, the Yacht failed its sea trial for reasons related to and/or arising out of the design and manufacturing defects alleged herein.

193.    By reason of the actions and inactions complained of herein including, but not limited to, MarineMax NE having failed to properly prepare the Yacht for a sea trial by reason of its ineffectual repairs, MarineMax NE breached the Listing Agreement.

194.    As a direct and proximate result of these breaches, Plaintiff sustained (and continues to sustain) damages including, but not limited to, carrying costs, the loss of the potential sale of the Yacht; incidental and consequential damages as well as costs and attorneys' fees all of which it seeks to recover by way of this action.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff New England Ventures, LLC demands a jury trial on all claims with respect to which it has a right to a jury trial.

WHEREFORE, Plaintiff New England Ventures, LLC prays:

(a)     That this Court find any arbitration term as may be asserted by Defendant MarineMax Northeast, LLC arising from the Agreement identified in Count One as unconscionable and not enforceable;

(b)     That this Court declare the Yacht Purchase Agreement *void ad ibinitio* on the basis that the design and manufacturing flaws frustrate the essential purpose of the Agreement and return Plaintiff to its original position through an award of the purchase price, all compensable damages, costs, attorneys' fees and interest;

(c)      In addition or in the alternative, that this Court find the Agreement cannot be enforced or that it is rescinded and return Plaintiff to its original position through an

award of the purchase price, all compensable damages, costs, attorneys' fees and interest;

(d)     In addition or in the alternative, that this Court award Plaintiff the total amount due on each of its Counts as alleged herein with interest, costs and attorneys' fees.

(e)     That all damages, fees, costs and interest awarded to Plaintiff be adjudged jointly and severally against all Defendants in accord with the individual Counts and

(f)     That the Court provide Plaintiff such other, further and/or different relief as it deems just and equitable under the circumstances.

// Signature Page Follows //

Dated:      October 7, 2022
                 Newport, Rhode Island

                             Fulweiler llc

                By:     /s/ John K. Fulweiler

                             _____

                             John K. Fulweiler, Esq. (#7876)
                             W.B. Franklin Bakery Building
                             40 Mary Street
                             Newport, RI 02840
                             (401) 667-0977 -- Telephone
                             (401) 646-2501 – Facsimile
                             john@saltwaterlaw.com
                             www.saltwaterlaw.com
                             *Attorney for Plaintiff*

-- Of Counsel --

Law Offices of Maurice Cusick
Attn.: Maurice Cusick, Esq.